ELIZABETH PERRY *v.* GEORGE E. SHELDON, Town Treasurer.

MARCH 18, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Evidence. Duties of Town Officer.*

A witness may properly be asked as to his duties as highway commissioner.

(2) *Evidence. Plats. Attested Copy.*

In an action against a town, for negligence, a copy of a plat offered by plaintiff, attested by the town clerk, is properly admitted in evidence.

(3) *Evidence. Surveyor. Plats.*

A surveyor, on examination relative to a highway, may properly testify as to how the measurements of the ground hold out with reference to the figures on a plat.

(4) *Evidence. Plats.*

A surveyor may properly testify as to how the location of a fence, as he found it, compared with the lines as shown upon a plat.

(5) *Notice to Town.*

Where a notice to a town, of a claim for personal injuries, gave the place of the injury with sufficient definiteness, a mistake in the point of the compass will not affect it.

(6) *Injuries on Highway. Notice.*

In an action against a town, for injuries received through defect in a highway, request to charge that "the jury must find that the town had notice, or but for the want of reasonable care might have had notice, of the defective condition of the highway, and also that said town had a reasonable time after said notice, and before said injuries, to repair said defect, and negligently failed to repair said defect":—

*Held,* properly refused; since the town might have had time, after discovering the defect, to guard the same by railings or otherwise, even if it had not time to repair.

(7)  *Injuries on Highway.   Notice.   Highway Commissioner.*

Knowledge, by a commissioner of highways, of an excavation in a highway, is notice to the town.

(8)  *Injuries on Highway.   Negligence.*

The mere fact of an accident is not evidence of negligence on the part of a town, but it must be shown by direct evidence in what particular the town was negligent.

(9)  *Establishment of Highway.*

Request to charge that "plaintiff must show by a fair preponderance of evidence that the part of Main street in which she alleges she received the injuries was part of a public highway laid out, dedicated, and accepted by the town," was properly refused; as a highway may be established in other ways than those specified.

(10)  *Injuries on Highway.   Width of Highway.*

In an injury sustained within a highway, its width is immaterial.

(11)  *Establishment of Highway.*

Request to charge that plaintiff must show that that part of Main street where the injuries were sustained was a part of the highway as originally laid out and accepted by the town, and as shown on plaintiff's exhibit, was properly refused; since a highway may be established in other ways than those specified in the request.

(12)  *Highways.   Plats.*

A plat introduced in evidence may properly be considered by the jury in determining the lines of a highway.

(13)  *Injuries on Highway.*

Evidence as to existence of highway and injury, considered and held to sustain verdict.

TRESPASS ON THE CASE for negligence.   Heard on exceptions, of defendant, and denied.

JOHNSON, J.   This is an action of trespass on the case for negligence, brought by Elizabeth Perry, of the town of Warwick, in the county of Kent, against George E. Sheldon, town treasurer of said town of Warwick, for personal injuries claimed to have been suffered by the plaintiff by reason of a defect or want of repair in a certain public highway known as Main

street, in Arctic Centre, in the town of Warwick, on the 6th day of October, 1906.

The declaration alleges that Main street is a public highway of the town of Warwick, and that said town, on, to wit, the sixth day of October, 1906, and for a long time prior thereto, failed and neglected to keep said Main street in repair and amended so as to be safe and convenient for travel thereon, but, on the contrary, suffered and permitted said Main street in the portion thereof commonly used for foot travellers, and at a point in said Main street about fifty feet north from the intersection of Curson street with said Main street, on the westerly side of said Main street, in front of property owned by Annie Curson and occupied by M. D. Rinfret as a millinery store, to be and remain in an unsafe and dangerous condition in this, that said highway at the point aforesaid had, prior to that date, been dug up, and a trench about three feet wide and several feet deep was excavated therein for the purpose of, to wit, laying water supply pipes, or pipe or materials of some kind for some purpose, in said highway under the surface thereof, which said excavation had been refilled in an improper, careless, and defective manner, so that the earth and other filling in said excavation was loose, soft, and insufficiently tamped to sustain and support the weight of said plaintiff, although upon the surface of said refilled portion of the street there was nothing to indicate said loose, soft, and untamped condition. And the plaintiff avers that on, to wit, said sixth day of October, while she was in the proper and careful use of said Main street—was, to wit—walking thereon, she stepped upon and into said imperfectly filled portion thereof and immediately sank into and through the soft substance of earth with which said excavation had been filled, and by reason thereof the plaintiff was thrown to the ground and injured.

The case was tried in the Superior Court in Kent county, and on the tenth day of February, 1909, the jury returned a verdict, in favor of the plaintiff, for three thousand five hundred and eighty dollars.

The defendant filed a motion for a new trial on the grounds: *First.* That the verdict is contrary to the evidence and the

weight thereof. *Second.* That said verdict is contrary to
law. *Third.* That the amount of damages awarded by said
verdict is excessive. *Fourth.* That since the trial in said cause
the defendant has discovered new and material evidence, etc.

No affidavit as to new evidence was filed.

The motion for a new trial was heard by the Superior Court,
and on March 5, 1909, was denied. March 8, 1909, the defend-
ant excepted to the denial of said motion for a new trial, and
filed notice of its intention to prosecute a bill of exceptions.
The case is now before us on defendant's bill of exceptions:
(1) to certain rulings of the justice presiding at the trial ad-
mitting certain evidence, as shown on pages 120, 154, 206, and
320 of the transcript of testimony. (2) To the decision of said
justice denying defendant's motion for the direction of a verdict
for the defendant, as shown on pages 344, 345, and 346 of the
transcript of testimony. (3) To the refusal of said justice to
charge the jury as requested by the defendant, as shown on
pages 363, 364, 365, and 366 of the transcript of testimony.
(4) To the decision of said court denying the defendant's motion
for a new trial.

(1)     Considering the exceptions designated (1) in the bill of
exceptions, to the admission of testimony: As to the first
exception to the admission of testimony, page 120 of the tran-
script, the question to which objection was made was—"As
highway commissioner, what were your duties?" To this
question no answer was given. After the objection, the follow-
ing question was asked: "What were you supposed to do on the
highways?" The transcript then proceeds: "THE COURT: What
is the objection? MR. COSGROVE: I don't think it is the best
evidence. THE COURT: If he was highway commissioner of the
town of Warwick it may be supposed he knew what his duties
were. If you have any ordinance that defines his duties
you may produce it. Have you an ordinance that defines the
duties? MR. COSGROVE: I don't think, may it please the court,
we are called upon to prove the plaintiff's case. THE COURT:
You may answer the question. Exception taken by Mr.
Cosgrove." The following question was then asked: "What
were you supposed to do as highway commissioner, working

for the town?" We think the exception is without merit. It was proper to ask the witness what his duties were as highway commissioner, and no exception was taken to the form of the question as finally asked and answered.

(2)    As to the second exception to the admission of testimony, page 154 of the transcript, the question excepted to was: "I show you a certified copy of a plat signed by James T. Lockwood, town clerk, having the seal of the town of Warwick, and with the words thereon, 'Warwick, Town Clerk's Office, February 3rd, 1909, a true copy; attest,' and ask you if that is a true copy that you have just testified to as being certified to by the town clerk?" To this question Mr. Cosgrove objected, saying, "I object to that; this paper does not purport to be the official act of the town of Warwick." "THE COURT: So far as it goes it may be admitted." This ruling was excepted to by Mr. Cosgrove. This ruling was clearly correct.

(3)    As to the third exception to the admission of testimony, p. 206, the question was, "And how did the physical measurements, the ground, hold out with reference to these figures?" This question was allowed, and exception was taken. A surveyor was being examined as to the highway in question and as to how it compared with the lay-out of the highway from Centreville to the Green Manufacturing Company, made in 1822, and had testified that he had made certain measurements on said plat, and as to the measurements made in fixing certain points upon the highway, and had been questioned as to the measurements on the plat of said lay-out. The question was properly allowed. It was proper to allow him to testify how the measurements of the ground held out with reference to the figures on the plat.

(4)    As to the fourth exception to the admission of testimony, page 320 of the transcript, the question objected to was: "If you know of any reason why that should not be adopted as the easterly boundary of that lane, please state it." The surveyor had testified to the location of the fence, as he found it, upon the easterly side of a certain lane shown on the "Barnes Plat," but had said, "I don't say it was on the easterly edge of the lane." He had then been asked: "It is on the easterly edge of

what was apparently used as the lane?" and had answered: "I agree with you now." The question to which the objection was made was then put. The question was properly allowed. The witness had testified as to the location of the lane in question upon the plat, and as to the location of the fence, as he found it, upon the easterly side of the lane. It was entirely proper to allow him to testify as to how the location of the fence, as he found it, compared with the lines as shown upon the plat.

The exception designated (2) in the bill of exceptions, to the decision of the court denying defendant's motion for the direction of a verdict for the defendant, was waived by the filing by the defendant of a motion for a new trial on the ground that the verdict was against the evidence. *Barstow* v. *Turner*, 29 R. I. 100.

The exception designated (3) in the bill of exceptions is to the refusal of the trial justice to charge the jury as shown on pp. 363, 364, 365, and 366 of the transcript. The requests refused were:

(5)  "*First.* To enable the plaintiff to recover, the jury must find from the evidence that the plaintiff received the injuries complained of by reason of a defect or want of repair in a certain public highway known as Main street, in Arctic Centre, in the town of Warwick, at a point about fifty feet going north from Curson street, a public highway in said Arctic Centre, on the westerly side of Main street, in front of the property owned by Annie Curson and occupied by Mrs M. D. Rinfret, as a millinery store in said Arctic Centre."

The justice had already charged the jury upon the question as to the direction of the place of the accident from Curson street as given in the notice to the town, and had said: "The notice in this case specifies that the accident occurred on the westerly side of Main street about fifty feet north from Curson street and opposite the Curson Block or the block owned by Annie Curson —without attempting to use the exact language of the notice— or the block which was occupied by Annie Rinfret as a millinery store. It appears that Annie Curson did not own any block north of Curson street on the westerly side of Main street and

within a distance of fifty feet or thereabouts of Curson street, but she did own a block south of Curson street, on the westerly side of Main street and within the distance of fifty feet from the intersection of Curson and Main streets. The word, 'North' is unfortunately used there. If that word was eliminated there would be no question in my mind as to the correctness or sufficiency of the notice. The word 'North' is used there instead of the word 'South.' Neither would be necessary, because, if it was stated in the notice that the accident occurred opposite the Curson building on the westerly side of Main street in the village of Arctic Centre, and within a distance of about fifty feet from Curson street, there would be nothing to mislead any parties; but it is a rule of law that where a location is to be established by directions and monuments and the directions or points of the compass are in conflict with the monuments alluded to, the monuments must control. That is a rule of law in conveying real estate, and I think it is applicable to any case, any ordinary case, where the attempt has been made to locate a spot or a particular place. Now, if that is so, the monument referred to in this case would be the Curson building. Now, there would be a distance of about fifty feet from Curson street on the westerly side of Main street. The point of the compass used is north, but that must give way to the monument, which is the Curson building and happens to be located south. Therefore, I charge you, as a matter of law, from the evidence, from the undisputed evidence so far as it relates to that fact that the notice given in this case is sufficient."

The notice given to the town council in this case was as follows:

"Arctic, R. I., Nov. 3, 1906.

"*To the Town Council of the Town of Warwick, in the County of Kent, and the State of Rhode Island.*

"Gentlemen, In accordance with the provisions in chapter 36 of the General Laws of 1896, and amendments thereto, you are hereby notified that Elizabeth Perry of said Warwick presents a claim against said town of Warwick for injuries to her person, to wit: bodily and internal injuries, which occurred on

the 6th day of October, 1906, by reason of a defect, or want of repairs in a certain public highway known as Main street in Arctic Centre in the town of Warwick, aforesaid, at a point about fifty feet, going north from Curson street 'a public highway' in said Arctic Centre, on the westerly side of said Main street, and in front of the property owned by Annie Curson and occupied by Mrs. M. D. Rinfret as a millinery store in said Arctic Centre. The said Elizabeth Perry further alleges that while she was walking along and on said Main street or public highway, she suddenly sank through soft earth into an excavation or ditch in said Main street, which had been made prior to the 6th day of October aforesaid, for the purpose of laying pipes and *which* excavation or ditch had been improperly and carelessly refilled, so that said earth in said excavation or ditch was not solid enough to bear her weight and that she fell through said earth, in said excavation or ditch, and caused the injuries complained of, to the damage of the said Elizabeth Perry to the amount of four thousand dollars.

                      "Respectfully submitted,
                              "ELIZABETH PERRY,
                           "*By her Attorney, M. L. Lizotte.*"

The proof showed that the place where the injury was received was south of Curson street, instead of north, as stated in the notice. It also showed that it was on the westerly side of Main street and in front of the property owned by Annie Curson, and occupied by Mrs. M. D. Rinfret as a millinery store, and that the plaintiff sank through soft earth into an excavation in said Main street, which had been made a few days before.for the purpose of laying water pipes and had been refilled with earth by the water company which had made the excavation. In these last mentioned particulars the notice gave the location with sufficient clearness. The use of the word "north" constituted the only uncertainty as to the location. It was shown that Annie Curson owned no property on Main street north of Curson street, and also that no excavation had been recently made in Main street north of Curson street. By the statute cap. 36, § 15, Gen. Laws, 1896, a person injured by

reason of a defect in a highway is required, "within sixty days thereafter, to give to the town by law obliged to keep such highway . . . in repair, notice of the time, place, and cause of such injury or damage." But for the use of the word "north," the notice given in this case would certainly meet these requirements. In *Maloney* v. *Cook*, 21 R. I. 471, this court, while holding the notice in that case insufficient, said (pp. 475-6): "We do not wish to be understood, by what we have said, as holding that a notice given under the statute ought to be construed with technical strictness; but that it is sufficient if it gives to the officers of the town or city 'information with substantial certainty as to the time and place of the injury, and as to the character and nature of the defect which caused it, so as to aid them in investigating the question of liability of the town.'" The notice gave the place of the injury as on the westerly side of Main street in Arctic Centre, in front of the property owned by Annie Curson and occupied by Mrs. M. D. Rinfret as a millinery store. We think this notice gave the place of the injury with sufficient definiteness in spite of the use of the words "going north from Curson street." The mistake in the point of the compass must yield to the definiteness of the description in the respect mentioned. We think the charge of the trial judge upon this point was correct. The defendant's first request to charge the jury was properly refused.

(6)    The second request to charge is as follows: "To enable the plaintiff to recover, the jury must first find from the evidence that the town of Warwick had notice, or but for the want of reasonable care might have had notice, of the defective condition of the highway, and also that said town had a reasonable time, after said notice and before said injuries were received by the plaintiff, to repair said defect or want of repair in said highway and negligently failed to repair said defect." This request does not state the law with entire correctness. The town might have had time, after discovering the defect, to guard the same by railings or otherwise, even if it had not time to repair. The request was properly refused. The court, however, charged the jury as follows: "The second request is

refused, as I have already suggested, but in place of that I will give you the law as follows: That relates to the notice which the town must have as to the existence of a defect in the highway. Of course, a town is not liable for an injury which has occurred to a person by reason of a defect in the highway unless the town had notice of the existence of such defect, or unless it had existed for such a length of time that the town by the exercise of ordinary prudence and reasonable care might have known of its existence; but in the case before the court and before you now, one of the witnesses, who has said that he was commissioner of highways in the town of Warwick, testified that he knew of the excavation when it was going on; therefore, as a representative of the town in the particular capacity which it was his duty to look after—that is, highways—he having notice, the town had notice. In a case involving a somewhat similar point to the one in the case now before the court, which is the case of *Seamans* v. *Fitts*, reported in Volume 20 of the Rhode Island Reports at page 445, the court uses the following language: —' Inasmuch as the statute, General Laws of Rhode Island, chapter 72, section 1, imposes on towns the duty of keeping their highways safe and convenient for travel, a town is bound to exercise a supervision over the making of any excavation or obstruction which it authorizes or permits in its highways, or over any, of which it has notice, made without its authority or permission. . . . Knowledge on the part of the highway surveyor is notice to the town, since he is the officer of the town charged with the duty of keeping the highway in repair.'

"So that, accepting that as the law, and it is the law so expressed by the supreme court of the State, and that makes it the law—that if this commissioner of highways, as he has said, knew of an excavation being made in the highway, whether it was made by permission of the town, or not, it was his duty to look after it, under the authority which I have just read to you, and see that the excavation was properly filled, and if he failed to do so—and I would say his knowledge would be knowledge on the part of the town and that is all the knowledge or notice required by the town—so far as the notice goes, if you find that this commissioner knew of this excavation, then

the town had all the notice that was necessary for them to have, because the testimony is here that the excavation was made several days before the accident and this commissioner of highways said he was there at the time of the accident."

(8) The third request was as follows: "The mere fact of the accident is not evidence of negligence on the part of the town, but it must be shown by direct evidence in what particular the town was negligent." This request was refused. While this request stated the law correctly, it was fully covered by the charge, the judge saying: "Of course, the very fact that a person receives an injury within the limits of the highway doesn't entitle that person to recover unless the injury was received by reason of a defect in the highway which the town was bound to keep in repair." Having been once charged, that was sufficient. The refusal was proper.

(9) The fourth request was as follows: "In order to entitle the plaintiff to recover she must show by a fair preponderance of the evidence that the part of Main street in which she alleges she received the injuries complained of was part of a public highway laid out, dedicated, and accepted by the town of Warwick." This request was properly refused, as a highway may be established in other ways than those specified in this request.

The sixth request was as follows: "There is no evidence before the jury showing that the part of Main street, where the plaintiff alleges she received the injuries complained of has been used and improved or repaired by the town of Warwick for a period of twenty years or upwards, consequently the jury can not take into consideration in arriving at a verdict the evidence submitted on behalf of plaintiff seeking to show that that part of Main street in which the plaintiff alleges she sustained the injuries complained of has been used as a highway for twenty years or upwards." This request, in brief, is that the court charge that there is no evidence of a certain fact, and consequently the jury can not consider evidence submitted to prove said fact. The request was properly refused.

(10) The seventh request was as follows: "There is no evidence before the jury showing the width of any part of the highway

as shown by plaintiff's exhibit one." This request was properly refused. Whether or not there was evidence before the jury as to the width of any part of the highway as shown in said exhibit was something within their knowledge, upon which they did not need to be informed by the court. Further, the width was immaterial. . If the injury was sustained within the highway, it would not matter whether the highway was wide or narrow.

(11) The eighth request was as follows: "In order to entitle the plaintiff to recover she must show by a fair preponderance of evidence that that part of Main street in which she alleges to have sustained the injuries complained of is a part of the highway as originally laid out and accepted by the town and as shown on plaintiff's exhibit one." This request was properly refused for the same reason as the fourth request, viz., that a highway may be established in other ways than that specified. in the request.

(12) The ninth request to charge was as follows: "In view of the fact that at the time of the making of the 'Barnes Plat' so called (shown on plaintiff's exhibit 4), Mr. A. K. Barnes did not own the land on the northwest corner of Main and Curson streets, now occupied by the Curson building, the jury cannot take into consideration the 'Barnes plat,' so-called, (shown on plaintiff's exhibit 4) in locating the western line of the highway." From the transcript it appears that the judge granted the defendant's ninth request. What he charged, however, as the ninth request, was the following: "In determining whether or not that part of Main street in which the plaintiff alleges she received the injuries complained of is a highway the jury can not take into consideration opinions of witnesses, but facts must be shown that it was part of the public highway." This is good law, although it was not in the words of the ninth request as found in the list of requests to charge in the transcript. We think the request as it appears above should have been refused, and, as it was not given, we think it may be considered as refused. The "Barnes plat" had been introduced in evidence without objection, and, being in evidence, it could properly be considered by the jury.

The tenth request is as follows: "The only evidence before the jury showing that the Barnes plat, so-called (plaintiff's exhibit 4), is the same as, or conforms with, the lines of the highway as originally laid out and as shown by the plaintiff's exhibit one is the opinion of the witness, Robert W. Greene, therefore, the jury, in arriving at a verdict, must not take into consideration the Barnes plat (plaintiff's exhibit four)." This request assumed to state what the only evidence was before the jury, and requested an instruction that the jury must not take into consideration a plat which had been introduced in evidence which appeared to bound easterly on Main street the highway on which the injury was alleged to have been received. This plat was introduced as evidence corroborative of the lay-out and occupation of said highway as shown by the plat of the original lay-out and its present location. It had been introduced without objection. The court had instructed the jury that proven facts, and not opinions, must be considered by them. The request was properly refused.

The eleventh request was as follows: "In arriving at a verdict the jury must not consider the Barnes plat, so called (plaintiff's exhibit 4)." This was properly refused, for the same reasons as the tenth request.

(13)   Considering the exception designated (4) in the bill: To the decision of said court denying the defendant's motion for a new trial—The evidence shows that on October 6th, 1906, about six o'clock in the afternoon, while the plaintiff was walking along on the right-hand side of Main street in Arctic Centre, going towards Centreville, where she lived, her left leg went through the sidewalk to above her knee; that she put her elbow down and lifted herself up; that the injuries complained of were caused by said fall; that she was opposite the building of Annie Curson when her leg went through the sidewalk. The plaintiff so testified, and was corroborated by her mother and her sister-in-law. It was shown in evidence that the Warwick and Coventry Water Company had made an excavation in Main street prior to October 6, 1906, at a point sixty or seventy feet southerly from the corner of Curson and Main streets, on the westerly side of Main street, five or six feet outside of the line of the curb-

stone, and near the southerly end of a building owned by Annie Curson, situated on the corner of Main and Curson streets, and facing on Main street, and occupied by Mrs. M. D. Rinfret as a millinery store and by Leon Ansay as a shoe repairing shop, for the purpose of putting in a new piece of pipe and a shut-off; and that a trench, or hole, was then dug up to and under the curbstone to the inside of the curbing for a distance of about six or eight inches; that when the Warwick and Coventry Water Company had connected its pipes, the trench and excavation were refilled with earth.

Edwin Nolett testified that in the year 1906 he was highway commissioner of the town of Warwick; that he was working on the road, fixing the road, building the road. That on October 6, 1906, his attention was called to a defect on Main street, because there was something washed out; was a hole right across the road, right opposite Annie Curson's building, about sixty feet from Curson street, and that he repaired this defect. "Q. 22. What did you find the defect was? A. It was broke down, sunk down. Q. 23. Caused by what? A. They didn't refill right, I suppose. Q. 24. Tell us just what this defect was and what you found, what conditions you found there? A. It was muddy right where it broke through; crossed the track and paving. Q. 28. Do you know whether this Mrs. Perry went through the sidewalk or not? A. Yes, sir." He testified that he was fixing right on the paving work, on the outside curbing, filling the ditch with crushed stone. "Q. 33. Previous to this day do you know whether there was a ditch dug on the street at this place? A. Yes, sir. Q. 34. You saw someone dig it there? A. Yes. Q. 37. How far did this ditch that you saw dug a few days before, as you have stated, go; how long was it; how long did it go? A. Towards the road and towards the building. Q. 39. Where did it start first in the middle of the street? A. It started in the track. Q. 40. And how far did it go? A. Clear up to the building." He further testified that he was working on the street side of the curbstone; that Mrs. Perry fell through on the sidewalk; that he saw the place she went in; that there was a hole after she got out about a foot square and about a foot deep; that the hole

was about a foot and a half from the curbing towards the building; that he was filling in the ditch; that he broke through the sidewalk with a bar and it was hollow; that he then filled it with crushed stone; that it had been filled with loam; that he would not call that ditch properly filled. He testified in answer to question 76, "Now, Mr. Nolett, tell us just how you found the condition of this place between the curbstone and the Curson building when you went down there to do whatever you did? A. When I went down there, I didn't see nothing on the sidewalk; sidewalk was all right, but on the side of the curbing little hole about as big as my fist on the sidewalk and the time I was fixing the outside of the place on the road side, I see three women coming behind, coming up from Clyde. Q. 78. Now, go on. A. And the time I was working, of course, I didn't pay no attention to them behind me and I hear somebody holler. Just turned around and see one woman was way down and was just getting up." He said that this woman was Mrs. Perry. He testified that the trench was dug by the Warwick and Coventry Water Company and that it was refilled by that company six or seven days before the time he was called to repair it.

Robert W. Greene testified that he was the town surveyor of the town of Warwick; that he looked up the records of the town of Warwick for the purpose of finding the lay-out of a street running from Centreville bridge to the Green Manufacturing Company's mill at Greenville, now Riverpoint; that he found a plat on record showing that lay-out; that he made a copy of said plat, which has been certified to by the town clerk of Warwick. The certified copy was introduced in evidence and marked "Plaintiff's Exhibit A." A certified copy of the record of the lay-out was offered in evidence and marked "Plaintiff's Exhibit 2." He further testified that he had been familiar with the streets of the town of Warwick in that vicinity eight or ten years; that the street delineated on "Plaintiff's Exhibit A" is the street referred to in the records, "Plaintiff's Exhibit 2;" that he does not know of any other street in the town of Warwick running from the Centreville bridge to the Green Manufacturing Company's mill, of that shape; and knows of no

road running direct from the Centreville bridge to the Green Manufacturing Company's mill; that he took some measurements on the plats and they agreed within a few feet, in a distance of half a mile or more; that he had measured the width of the highway from William C. Tibbitt's building to Annie Curson's building opposite, and that the distance is forty-four and seven-tenths feet. A plat was introduced in evidence entitled: "Plan of a portion of Quidnick & Curson streets, at their intersection in the village of Arctic Centre, Warwick, R. I., by Robert W. Greene, C. E. Jan. 1908," and marked "Plaintiff's Exhibit 3." He testified that this plat shows the location of the Curson property and the property of William C. Tibbitts; that the red line on said plat shows the line of the "Barnes Plat" on the westerly side of Quidnick street; that Quidnick and Main streets are the same; that the northwest corner of the Curson house is about right, the rest is in the street. A certified copy of a plat was then put in evidence, entitled "Map of property in Warwick, belonging to Albert K. Barnes, G. T. Lamphear, surveyor, 1870," and marked "Plaintiff's Exhibit 4." He testified that the plat shows the land of which the Curson property is a part; but does not show the Curson property; that the land where the Curson property now is was sold before the plat was made; that in drawing the plat, "Plaintiff's Exhibit 3," he had the assistance of the "Barnes Plat;" that the corner of Curson and Main streets, as shown on "Plaintiff's Exhibit 3," harmonizes and corresponds with said corner as shown by the land on the "Barnes Plat;" that he located the westerly line of Main street on said exhibit 3 in harmony with the easterly line of the "Barnes Plat;" that these plats and the location of the street to-day correspond in a general way: that he made the assessors' maps of the town of Warwick and by scaling them the distance from the bridge up to the corner, they agree with the distance given on this plat within fifteen or twenty feet.

It was shown in evidence that about the time of the excavation in Main street by the Warwick and Coventry Water Company, another excavation was made by the Pawtuxet Valley Water Company, starting in Main street and extending thence

into and along Curson street, said street being at right angles with Main street.

In 1822 the town of Warwick laid out a highway from Centreville bridge to the Green Manufacturing Company. A copy of the plat and a copy of the record of said lay-out certified by the town clerk of the town of Warwick were introduced in evidence. It was shown in evidence that the highway in question known as Main street, ran from the Centreville bridge to what was formerly known as the Green Manufacturing Company, now the Royal Mill in Riverpoint; that portions of said street are known and referred to as Quidnick street and Allen street, but the whole is known as Main street.

Evidence was also introduced that the highway, as it existed and was located at the place of the injury, at the time of the injury, had been occupied, used, and repaired as a highway for many years.

James T. Bannon testified that he had lived in the town of Warwick forty-eight years; in Arctic Centre, eighteen years; before that in the village of Crompton about a mile from Arctic Centre; at the time of the trial he lived on Main street, nearly opposite the Curson property; had known that street as Main street about forty years; that he didn't know that the lines of Main street opposite the Curson property had ever been changed; fifteen years ago there was no curbstone on either side; about fourteen years ago a curbstone was placed there; travelled over the street there in front of the Curson property twice a day for eighteen years; used the sidewalk there for forty years back. "Q. 23. Should you say, Mr. Bannon, that a place, a point about a foot or a foot and a half inside of the present curbstone at a place on Main street near the southern end of the Curson property, was used as a sidewalk? 'A. Yes." He testified that the Curson building had been raised up a story and a piazza built out onto the sidewalk. Had known the sidewalk as it is used today for forty years.

William C. Tibbitts testified that he had lived in Arctic Centre forty odd years, and had lived at his present location, nearly opposite Annie Curson's building, since 1881; that he lived in the Daly building five years before that; that there had

been no change in Main street in that time except as to curbing
and repairing, only when they set the curb they raised the road
a little.

Pierre Bedard testified that he had lived in Arctic Centre
twenty-seven years; in the dry-goods business there twenty-
one years; knows the Curson property; passed there often.    He
had never noticed any change in the lines of Main street.

Joseph Bouchard testified that he had lived in Arctic Centre
twenty-eight years; in Warwick thirty-five years since he came
back there; first came to Arctic forty-nine years ago; testified
that the lines of Main street had been as they are now thirty-
five years, as he knew.

Joseph Gagnon testified that he had lived in Warwick fifty-
four years; in Arctic Centre thirty years; worked on the highway
for the town of Warwick; had been road commissioner, worked
about fifteen years as foreman and road surveyor or highway
commissioner for the town of Warwick; that the lines of the
street at a place opposite the Tibbitts' and Curson properties
were as they are now as long as he could remember.    He testi-
fied that he put in the curbing fourteen years ago in front of
the Curson property.

We think the evidence was such as to justify the verdict.
The damages do not appear to us to be excessive.

The justice presiding at the trial has sustained the verdict,
and denied the motion for a new trial.    We see no good reason
for reversing his decision in that regard.

The defendant's exceptions are overruled, and the cause is
remitted to the Superior Court with direction to enter judgment
upon the verdict.

*M. L. Lizotte, P. H. Quinn,* for plaintiff.

*Lester T. Murphy, Waterman, Curran, and Hunt,* for defend-
ant.